UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION


ROBERT IRVIN, SR., and
NANCY IRVIN,                                  )
                                              )
          Plaintiffs,                         )
                                              )
     vs.                                      )          Case No.   2:05CV00014 AGF
                                              )
PIKE COUNTY MEMORIAL                          )
HOSPITAL, and PHILLIP W. PITNEY,              )
M.D.,                                         )
                                              )
          Defendants.                         )


**MEMORANDUM AND ORDER**

This matter is before the Court on the motion of Defendant Pike County

Memorial Hospital ("PCMH") for summary judgment.[1]  For the reasons set forth below,

this motion shall be granted.

**BACKGROUND**

Plaintiffs Robert Irvin, Sr., and Nancy Irvin, the parents of decedent Delia White,

filed this action under the Emergency Medical Treatment and Active Labor Act

("EMTALA"), 42 U.S.C. § 1395cc, against Defendant Pike County Memorial Hospital

("PCMH").  Plaintiffs also bring a pendent state law claim for medical malpractice

against PCMH employee, Phillip Pitney, M.D.  The record establishes that the decedent,

an individual known by PCMH not to have medical insurance, presented to PCMH's

emergency room at 10:20 p.m. on February 17, 2004, complaining of a migraine

---

[1]    The parties have consented to the exercise of authority by the undersigned
United States Magistrate Judge under 28 U.S.C. § 636(c).

headache starting three days prior, with vomiting. The record further establishes that Dr. Pitney, the director of the emergency room, examined and discharged decedent within approximately two hours, and that the next day, decedent died of acute hydrocephalus.[2] Plaintiffs claim that PCMH violated EMTALA in three ways: by failing to provide an appropriate medical screening (Count I), by failing to provide stabilizing treatment (Count II), and by improperly discharging decedent (Count III).[3]

PCMH moves for summary judgment on all claims against it. Plaintiffs concede that PCMH is entitled to summary judgment on Counts II and III, but they argue that there exists genuine issues of material fact as to whether PCMH provided appropriate medical screening to decedent, precluding summary judgment on Count I. With regard to Count I, PCMH argues that Plaintiffs' claim fails because they have not alleged or submitted any evidence that PCMH treated decedent differently than any other patient with the same symptoms. The record includes Dr. Pitney's deposition taken on December 5, 2005. Dr. Pitney testified that decedent was a first-time patient for him, and that based upon her complaints and history, which included a history of migraines, he thought she had a recurrent common migraine headache. He testified that blood work, decedent's vital signs, and the results of a physical exam he performed, which were all

---

[2]    Hydrocephalus is a condition marked by the accumulation of fluid in the region of the brain. The fluid puts pressure on the brain, forcing it against the skull and damaging or destroying brain tissue. Symptoms may included headaches, vomiting, vision changes, and depressed eyes, with a "setting-sun" sign where the white portion of the eye is visible above the iris. A neurological exam may show specific deficits. Untreated hydrocephalus has a 50-60 percent death rate. www.nlm.nih.gov/medlineplus

[3]    Count IV of the complaint is the medical malpractice claim; Count V was against another Defendant and was voluntarily dismissed by Plaintiffs.

normal, as well as the fact that there was no change in decedent's past headache pattern, confirmed this opinion. Pl.'s Ex. F. He explained that he ordered a CT scan for the next day because with "a chronic recurrent headache . . . that has no acute changes in pattern, that it's reasonable to do it on an elective basis." Id. at 46. Dr. Pitney testified that he therefore did not order an immediate CT scan or consultation, but discharged decedent after her headache had diminished, with standard migraine medications and instructions for her to follow up with her treating physician and to get a CT scan the next morning. Dr. Pitney testified that his physical exam of decedent included an eye exam to check for papilledema (edema of the of the optic disc, often due to intracranial pressure), which he did not find, and that had he detected papilledema, he would have proceeded with other diagnostic tests and/or a neurological consultation. Id. at 43-44, 63-64.

In response to PCMH's motion for summary judgment on Count I, Plaintiffs argue that the report and deposition testimony of their expert, David Lickerman, M.D., establishes a factual dispute as to whether Dr. Pitney performed the eye exam he asserts he performed. According to Dr. Lickerman, had Dr. Pitney performed the eye exam, he would have detected the presence of papilledema. Dr. Lickerman also stated, somewhat contradictorily, that due to the presence of cataracts in decedent's eyes, it would have been "difficult, if not impossible" to judge whether there was papilledema or not. Pls.'s Ex. C. PCMH replies that Dr. Lickerman's above-mentioned opinion is not admissible, as it amounts to nothing more than an attack on Dr. Pitney's credibility. PCMH also reasserts that Plaintiffs have failed to meet their burden to show that Dr. Pitney treated decedent differently from other patients, an essential element of their Count I EMTALA

claim.

## DISCUSSION

Summary judgment may be granted if, viewing the evidence in the light most favorable to the non-moving party, there is no dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 59(c). When a motion for summary judgment is made and properly supported by evidence, the non-moving party may not rest on the allegations of his pleadings, but must set forth specific facts, by affidavit or other evidence, showing that there is "a genuine issue for trial." Fed. R. Civ. P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v Zenith Radio Corp., 475 U.S. 574, 587 (1986). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The operative language of EMTALA, for purposes of Count I in the present case, is that a hospital such as PCMH "must provide for an appropriate medical screening exam within the capability of the hospital's emergency department . . . to determine whether or not an emergency medical condition . . . exists." In Summers v. Baptist Medical Center of Arkadelphia, 91 F.3d 1132 (8th Cir. 1996), the Eighth Circuit explained that the purpose of EMTALA was "to address a distinct and rather narrow problem - the 'dumping' of uninsured, underinsured, or indigent patients by hospitals

4

who did not want to treat them." Id. at 1136. The Court then held as follows:

> [A]n inappropriate screening exam is one that has a disparate impact on
> the plaintiff. Patients are entitled under EMTALA, not to correct or non-
> negligent treatment in all circumstances, but to be treated as other
> similarly situated patients are treated, within the hospital's capabilities.
> It is up to the hospital itself to determine what its screening procedures
> will be. Having done so, it must apply them alike to all patients.

Id. at 1138. The Court held that a plaintiff need not prove an improper motive on the part

of the hospital to 'dump' the patient, but the Court agreed with the uniform interpretation

by other circuits that the "appropriate medical screening examination" provision is only

violated by disparate treatment of a patient, and not by negligence in the screening or

diagnostic process. Id. at 1137-38 (patient did not receive disparate treatment when

hospital failed to take x-rays that would have revealed broken rib and sternum, and thus

could not bring action under EMTALA based on inappropriate medical screening)

(citing Williams v. Birkeness, 34 F.3d 695, 697 (8th Cir. 1994) (hospital was entitled to

summary judgment in patient's action alleging violation of EMTALA where patient failed

to show hospital treated patient differently from other patients; hospital was not required

to disprove patient's claim that hospital failed to provide patient an appropriate medical

screening by showing all patients were treated the same)); see also Hunt ex rel. Hunt v.

Lincoln County Mem'l Hosp., 317 F.3d 891, 894 (8th Cir. 2003) (affirming judgment as

a matter of law in favor of hospital where plaintiff's claim was not that he received non-

uniform treatment, but that he received incorrect treatment).

Here, PCMH has offered evidence that Dr. Pitney treated the decedent the same

as he would any other patient presenting in the same fashion, and Plaintiffs have not

alleged or presented any evidence that decedent was treated differently from any other patient under similar circumstances.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that the motion of Defendant Pike County Memorial Hospital for summary judgment on Counts I, II, and III of Plaintiffs' complaint is **GRANTED**.  [Doc. #28]

_Audrey G. Fleissig_
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated this 7th day of August, 2006.